Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>DIME COMMUNITY BANCSHARES, INC., VINCENT F. PALAGIANO, MICHAEL P. DEVINE, KENNETH J. MAHON, ROSEMARIE CHEN, STEVEN D. COHN, PATRICK E. CURTIN, BARBARA KOSTER, KATHLEEN M. NELSON, JOSEPH J. PERRY, and KEVIN STEIN,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Ryan Williams ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Dime Community Bancshares, Inc. ("Dime" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Dime by Bridge Bancorp, Inc. ("Bridge").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company's bank is headquartered in Brooklyn, New York.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Dime's common stock.

7. Defendant Dime operates as the holding company for Dime Community Bank that provides commercial banking and financial services in New York. Dime Community Bank is a

New York commercial bank that was founded in 1864. It maintains its headquarters at 300 Cadman Plaza West, Brooklyn, New York. As of June 30, 2020, it operated twenty-eight retail banking offices located throughout Brooklyn, Queens, the Bronx, and Nassau and Suffolk Counties, New York. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "DCOM."

8. Defendant Vincent F. Palagiano ("Palagiano") is Chairman of the Board of the Company.

9. Defendant Michael P. Devine ("Devine") is Vice Chairman of the Board of the Company.

10. Defendant Kenneth J. Mahon ("Mahon") is Chief Executive Officer ("CEO") and a director of the Company.

11. Defendant Rosemarie Chen ("Chen") is a director of the Company.

12. Defendant Steven D. Cohn ("Cohn") is a director of the Company.

13. Defendant Patrick E. Curtin ("Curtin") is a director of the Company.

14. Defendant Barbara Koster ("Koster") is a director of the Company.

15. Defendant Kathleen M. Nelson ("Nelson") is a director of the Company.

16. Defendant Joseph J. Perry ("Perry") is a director of the Company.

17. Defendant Kevin Stein ("Stein") is a director of the Company.

18. Defendants Palagiano, Devine, Mahon, Chen, Cohn, Curtin, Koster, Nelson, Perry, and Stein are collectively referred to herein as the "Individual Defendants."

19. Defendants Dime and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

20. On July 1, 2020, Dime and Bridge announced that they had entered into a definitive merger agreement to combine in an all-stock transaction. Under the terms of the merger agreement, Dime shareholders will receive 0.6480 shares of Bridge common stock for each share of Dime common stock they own. According to the announcement, upon completion of the merger, Dime stockholders will own approximately 52% and Bridge stockholders will own approximately 48% of the combined company. The press release announcing the proposed merger states, in pertinent part:

**Bridge Bancorp, Inc. and Dime Community Bancshares, Inc. to Combine in Merger of Equals Creating The Best Business Bank in New York**

July 01, 2020 16:35 ET | **Source:** Bridge Bancorp, Inc.

**From Montauk to Manhattan**

*Combination of two iconic community banks to create a New York-based champion that will be a significant source of strength*

*Highly complementary branch network with leading deposit market share, coverage of the entire Long Island market and significant branding power*

*Larger capital base and experienced leadership team with M&A integration expertise provide significant advantages to weather adverse economic conditions*

*Accelerates shareholder value creation via identified cost savings and enhanced pre-provision earnings power*

BRIDGEHAMPTON, N.Y. and BROOKLYN, N.Y., July 01, 2020 (GLOBE NEWSWIRE) -- Bridge Bancorp, Inc. (Nasdaq: BDGE) ("Bridge"), the parent company of BNB Bank, and Dime Community Bancshares, Inc. (Nasdaq: DCOM) ("Dime"), the parent company of Dime Community Bank, today announced that they have entered into a definitive merger agreement pursuant to which the companies will combine in an all-stock merger of equals transaction, valued at approximately $489 million. The merger combines two complementary banking platforms to create a premier community-based business bank. The combined

4

company will have over $11 billion in assets, over $8 billion in total deposits, and 66 branches spanning Montauk to Manhattan.

"This highly compelling combination will allow us to build on our complementary strengths and provide significant value for shareholders," said Kevin O'Connor, President and Chief Executive Officer of Bridge Bancorp. "Dime has earned its strong reputation in the greater New York metropolitan market, and I'm thrilled to partner with them.  Our enhanced branch footprint and increased capital base will allow us to better serve the needs of our customers. In addition, both companies have strong balance sheets and demonstrated histories of low loan losses through prior cycles, which give me confidence that we will be well-positioned to succeed in any environment. I look forward to working closely with Ken and the entire Dime team as we collectively become New York's premier community bank."

\*   \*   \*

**Transaction Details**

Under the terms of the merger agreement, which was unanimously approved by the boards of directors of both companies, Dime will merge with and into Bridge, with Bridge as the surviving corporation, and Dime Community Bank will merge with and into BNB Bank, with BNB Bank as the surviving institution.  Following the closing of the transaction, Dime shareholders will receive 0.6480 shares of Bridge common stock for each share of Dime common stock they own.  Each outstanding share of Dime's 5.50% Fixed-Rate Non-Cumulative Perpetual Preferred Stock, Series A will be converted into the right to receive one share of a newly created series of preferred stock of Bridge with the same preferences and rights.  Upon completion of the transaction, which is subject to both Dime and Bridge shareholder approval, Dime shareholders will own approximately 52% and Bridge shareholders will own approximately 48% of the combined company.

**Name, Branding and Headquarters**

The combined company will operate under the "Dime Community Bancshares, Inc." name and the combined bank will operate under the "Dime Community Bank" name. Leveraging Dime's ubiquitous brand name and having branch network coverage over the entire Long Island market provide the combined entity significant branding power.

Certain retail locations in eastern Long Island will operate under the BNB Bank name for at least one year.

The headquarters of the combined company will be located in Hauppauge, New York, with a corporate office to be located in New York, New York.

5

The combined company will trade under the Dime ticker symbol "DCOM" on The Nasdaq Stock Market.

**Governance and Leadership**

The combined company's board of directors will have twelve directors, consisting of six directors from Bridge and six directors from Dime.

- Kenneth J. Mahon, the current Chief Executive Officer of Dime, will serve as Executive Chairman of the combined company
- Marcia Hefter, the current Chairwoman of Bridge's board of directors, will serve as the independent Lead Director of the combined company

The combined company will be led by a well-respected management team that is comprised of individuals with significant financial services and M&A integration experience.

- Kevin O'Connor, the current President and Chief Executive Officer of Bridge, will serve as Chief Executive Officer
- Stuart "Stu" H. Lubow, the current President of Dime, will serve as President and Chief Operating Officer
- John McCaffery, the current Chief Financial Officer of Bridge, will serve as Senior Executive Vice President and Chief Risk Officer
- Avinash "Avi" Reddy, the current Senior Executive Vice President and Chief Financial Officer of Dime, will serve as Senior Executive Vice President and Chief Financial Officer

**Timing and Approvals**

The merger is expected to close in the first quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Advisors**

Piper Sandler Companies is acting as financial advisor, and has rendered a fairness opinion to the board of directors of Bridge. Luse Gorman, PC is serving as legal counsel to Bridge. Raymond James is acting as financial advisor, and has rendered a fairness opinion to the board of directors of Dime. Holland & Knight LLP is serving as legal counsel to Dime.

*       *       *

**About Bridge Bancorp, Inc.**

6

Bridge Bancorp, Inc. is a bank holding company engaged in commercial banking and financial services through its wholly-owned subsidiary, BNB Bank. Established in 1910, BNB, with assets of approximately $5.1 billion, operates 38 branch locations serving Long Island and the greater New York metropolitan area. Through its branch network and its electronic delivery channels, BNB provides deposit and loan products and financial services to local businesses, consumers and municipalities.

**About Dime Community Bancshares, Inc.**

Dime Community Bancshares, Inc. is the holding company for Dime Community Bank, a New York State-chartered community commercial bank that was founded in 1864. Dime Community Bank is headquartered in Brooklyn, NY and operates twenty-eight banking offices located throughout Brooklyn, Queens, the Bronx, Nassau and Suffolk Counties, New York. More information on Dime Community Bancshares, Inc. and Dime Community Bank can be found on Dime's website at www.dime.com.

21. On September 14, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement under the Securities Act of 1933 (the "Registration Statement") in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

22. The Registration Statement, which recommends that Dime shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial analyses performed by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), in connection with its fairness opinion, including the underlying financial information relied upon by Raymond James in connection with those analyses; and (ii) potential conflicts of interest involving Raymond James.

23. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Dime's Reasons for the Merger and Recommendation of the Dime Board of Directors; and (ii) Opinion of Dime's Financial Advisor.

7

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Dime shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Raymond James' Financial Analyses

25. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Raymond James.

26. The Registration Statement provides that, in connection with its fairness opinion, Raymond James reviewed information relating to the historical condition and prospects of Dime and Bridge, including: (1) the financial projections for each of Dime and Bridge that were certified by the management of Dime, referred to as the "Projections"; (2) the future estimates of potential cost savings, operating efficiencies, revenue effects, one-time costs and other financial adjustments expected to result from the merger, referred to as the "Synergies"; and (3) other pro forma financial adjustments then-expected to result from the merger as prepared by Dime management, referred to as the "Pro Forma Financial Adjustments." The Registration Statement, however, fails to adequately disclose in detail the "Projections," "Synergies," and "Pro Forma Financial Adjustments" relied upon by Raymond James.

27. With respect to Raymond James' "*Contribution Analysis*," the Registration Statement fails to disclose: (1) total assets; (2) gross loans; (3) total deposits; (4) non-interest bearing deposits; (5) tangible common equity; (6) last twelve months core net income; (7) estimated 2020 net income; and (8) estimated 2021 net income.

28. With respect to Raymond James' "*Discounted Cash Flow Analysis*," the Registration Statement fails to disclose: (1) the individual inputs and assumptions underlying the

8

(i) multiples ranging from 11.0x to 13.0x, and (ii) the discount rates ranging from 9.75% to 12.75%; (2) estimated 2025 earnings; and (3) the terminal values for Dime and Bridge.[1]

29. With respect to Raymond James' "*Selected Companies Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies Raymond James observed in its analysis.

30. With respect to Raymond James' "*Pro Forma Discounted Cash Flow Analysis*," the Registration Statement fails to disclose: (1) the individual inputs and assumptions underlying (i) the discount rates ranging from 9.00% to 12.00%, and (ii) Raymond James' basis for applying a range of 11.0x to 13.0x to the pro forma resulting company's estimated 2025 earnings; (2) the estimated excess cash flows that the pro forma resulting company could generate over the period from July 1, 2020 through December 31, 2024 and all underlying line items; and (3) the pro forma resulting company's terminal values.

31. With respect to Raymond James' "*Pro Forma Impact Analysis*," the Registration Statement fails to disclose: (1) the "pro forma assumptions" used in the analysis; and (2) the extent to which the Proposed Transaction could be (i) dilutive to Dime's estimated tangible book value per share, and (ii) accretive to Dime's estimated 2021 and 2022 earnings per share and estimated 2021 and 2022 dividends per share.

32. The valuation methods, underlying assumptions, and key inputs used by Raymond James in rendering its purported fairness opinion must be fairly disclosed to Dime shareholders. The description of Raymond James fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described

---

[1] The Registration Statement provides that Raymond James used estimated calendar year 2025 as the final year from the analysis, "[c]onsistent with the periods included in the Projections[.]" *See* Registration Statement at 79.

above, Dime shareholders are unable to fully understand Raymond James fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Dime shareholders.

### 2. Material Omissions Concerning Potential Conflicts of Interest Involving Raymond James

33. The Registration Statement omits material information concerning potential conflicts of interest involving Raymond James.

34. The Registration Statement provides that, in the past two years, Raymond James provided certain services to Dime and BNB Bank, including: (i) having served as joint book-running manager for Dime's public offering of preferred stock in January 2020 and sole book-running manager for Dime's public offering of preferred stock in June 2020; (ii) having served as agent for a share purchase program of Dime; and (iii) engaging in fixed income trading activity with BNB Bank.[2] *See* Registration Statement at 83.

35. The Registration Statement, however, fails to disclose the amount of compensation Raymond James received or expects to receive for providing the aforementioned services.

36. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

37. The omission of the above-referenced information renders the Registration

---

[2] BNB Bank is a wholly-owned subsidiary of Bridge.

Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Dime shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

40. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

41. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements and omissions in the Registration

Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited

access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

48. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 13, 2020       Respectfully submitted,

                **HALPER SADEH LLP**

                By: /s/ Daniel Sadeh
                Daniel Sadeh, Esq.
                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: sadeh@halpersadeh.com
                   zhalper@halpersadeh.com

                *Counsel for Plaintiff*